UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


ZACHARY MICHAEL LOBUE,

        Plaintiff,

      v.

MICHAEL REESE, Director Oregon Department of
Corrections (ODOC), *et al.*,

        Defendants.

Case No. 6:23-cv-00244-YY

OPINION AND ORDER


YOU, Magistrate Judge.

Plaintiff Zachary Michael Lobue, who is currently incarcerated by the Oregon

Department of Corrections ("ODOC"), has brought this action asserting claims in connection

with medical treatment he received for gastrointestinal symptoms while incarcerated, as well as a

separate set of claims related to injuries he suffered after he was assaulted by another inmate in

November of 2024 and the medical treatment he received for his injuries.

Plaintiff's complaint names the State of Oregon, ODOC, more than 40 individual

defendants, including ODOC administrators or other supervisors and medical providers, and a

number of Doe defendants. Second Am. Compl. ¶¶ 7–58, ECF 81. Plaintiff's nine claims for

relief are brought under 42 U.S.C. ¶ 1983 and state law and, broadly speaking, encompass

allegations that defendants erroneously administered medication to plaintiff without a proper

1 – OPINION AND ORDER

diagnosis for his gastrointestinal symptoms, failed to protect plaintiff from the assault, and were deliberately indifferent to his medical needs or negligent in providing him medical care following the assault. *Id.* ¶¶ 149–250.

Currently pending are two narrowly drawn motions to dismiss, one from defendant Joseph Bugher (the former Assistant Director of Health Services for ODOC), ECF 85, and one from Linda Bono, the nurse practitioner who played a primary role in treating plaintiff at the Oregon State Penitentiary after the assault, ECF 88. Both motions attack the legal sufficiency of plaintiff's claims based on the medical treatment plaintiff received following the November 2024 assault, specifically plaintiff's Eighth Amendment claim under section 1983 and state law negligence claim. As explained more fully below, both motions are granted as to plaintiff's Eighth Amendment claims but denied as to plaintiff's negligence claims.

## I.    Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) requires the court to examine whether the complaint contains sufficient factual allegations to show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Fed. R. Civ. P. 8(a)(2)). While a complaint need not contain detailed factual allegations, "formulaic recitation[s] of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" are not sufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In the absence of a cognizable legal theory or sufficient facts to support a cognizable legal theory, the claim should be dismissed. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a motion to dismiss, the plaintiff must plead facts sufficient for the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In addition to the factual allegations in the complaint, the court may consider documents that are attached to or incorporated by reference in the complaint, where the parties do not contest the authenticity of those documents, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## II.    Joseph Bugher

Defendant Bugher has moved to dismiss plaintiff's Eighth Amendment and negligence claims asserted against him. Bugher Mot. Dismiss 3, ECF 85. The factual basis for both claims is the same. Plaintiff alleges that Bugher was the "Assistant Director of Health Services for ODOC until he was placed on administrative leave on December 5, 2024 and terminated from his position on or about February 3, 2025." Second Am. Compl. ¶ 16, ECF 81. According to plaintiff, Bugher was "responsible for the provision of legally mandated medical, dental, behavioral, and mental health care, and pharmacy services to [adults in custody or AICs] in custody at all ODOC facilities," and "for ensuring that AICs received health care services comparable to health care in the community" and that the "health care was provided in a clinically appropriate manner by credentialed professionals in settings properly equipped for the delivery of health care." *Id.*

Plaintiff alleges that "ODOC has been facing significant and ongoing issues with its Health Services Division" for "many years," including "concerns . . . that there are unreasonably long delays for AICs to receive medical appointments with outside providers even after such treatment has been approved." *Id.* ¶ 65. Plaintiff claims that, sometime in 2023, Bugher and

others at ODOC "were made aware by other ODOC staff and medical providers that there was an ongoing issue with significant delays in scheduling and facilitating outside provider appointments for AICs even after the outside trip had been approved by the Therapeutic Level of Care Committee (TLCC)" and that "that these delays were causing AIC patients substantial harm." *Id.* ¶ 105. And, plaintiff asserts, ODOC has "[i]n recent years, . . . reportedly paid millions in settlements for the inadequate health care provided to AICs." *Id.* ¶ 65. Plaintiff contends that Bugher "removed [defendant Warren] Roberts from directly managing outside provider appointments" in February of 2024 "because Roberts' performance in managing the process was inadequate." *Id.* ¶ 106. Roberts allegedly rescinded a "rule" pertaining to outside treatment appointments in June of 2024. *Id.* These changes did not, according to plaintiff, alleviate the issue with delays, and plaintiff alleges that Bugher and others essentially failed to take "any additional meaningful action." *Id.*

Plaintiff's Eighth Amendment claim against Bugher is subject to dismissal because plaintiff has not alleged facts showing that Bugher personally "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Section 1983 liability "arises only upon a showing of personal participation by the defendant," acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right. *Id.* Supervisors are not vicariously liable for unconstitutional acts done by the individuals they oversee, but "they can be liable for their own conduct." *Peralta v. Dillard,* 744 F.3d 1076, 1085 (9th Cir. 2014) (en banc). A supervisor may be liable under section 1983 only upon a showing of either (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

4 – OPINION AND ORDER

Plaintiff does not allege facts showing that Bugher was involved in plaintiff's treatment or any of the specific decision-making that went into it, or that Bugher had any direct responsibility to train or supervise the individuals involved in providing plaintiff's medical care. *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (finding allegations that state agency administrator had knowledge of "systemic failures of foster care in Nevada" were not sufficient to state a section 1983 claim because the plaintiffs did not allege that the directors had "any personal knowledge of the specific constitutional violations that led to [the plaintiffs'] injuries, or that they had any direct responsibility to train or supervise the caseworkers" involved).

Nor does the complaint causally connect Bugher's generalized knowledge of the alleged systemic failures in the health care provided for inmates in the ODOC system to the specific acts or failures to act that led to plaintiff's injury. *See Buckley v. Cnty. of San Mateo*, No. 3:16-cv-07314-JD, 2017 WL 3394747, at *2 (N.D. Cal. Aug. 8, 2017) (explaining that for supervisory liability under section 1983, "it is insufficient for a plaintiff to allege only that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging 'a specific policy' or 'a specific event' instigated by them that led to the constitutional violations") (citing *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012)).

This court and the Ninth Circuit have both recently rejected an essentially identical Eighth Amendment claim against Bugher based on his "awareness" of the delays inmates were experiencing in the ODOC system. In *Webb v. Miller-Saltarello*, the plaintiff brought suit against ODOC administrators, including Bugher, and individual medical providers, alleging that the medical care he received following a "traumatic knee injury" while in ODOC custody was

5 – OPINION AND ORDER

delayed and inadequate. *See* First Am. Compl. 1, No. 6:23-cv-01636-MC (D. Or.), ECF 6. The plaintiff alleged that Bugher, in his role as ODOC's Assistant Director of Health Service, was "aware that the systems and processes used by ODOC to schedule outside medical trips for [adults-in-custody] was functionally broken resulting in a substantial probability that without extraordinary intervention plaintiff's MRI would not be scheduled appropriately or occur in a timely manner." *Id.* ¶ 32. That claim was dismissed because the plaintiff did not allege facts showing that Bugher "personally denied, delayed, or interfered with [the plaintiff's medical treatment." *Webb*, 2024 WL 986578 at *2 (D. Or. Mar. 7, 2024). The Ninth Circuit affirmed the dismissal of the claim, finding that the plaintiff's claim against Bugher was "properly dismissed" because the complaint lacked "facts sufficient to show that [Bugher] violated his constitutional rights." *Webb v. Miller-Saltarello*, No. 24-2094, 2025 WL 1563961, at *1 (9th Cir. June 3, 2025) (citing *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (explaining that a supervisory official is liable under § 1983 if "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation")).

Plaintiff's allegations against Bugher are essentially the same as the plaintiff's in *Webb*. Both asserted, as the basis for their Eighth Amendment claims, that Bugher knew that ODOC's system or process for scheduling outside medical consultations had resulted in delays for inmate medical care. Both claims also lack any allegation that Bugher was personally involved in the events that led to an alleged violation of a constitutional right or a sufficient causal connection

6 – OPINION AND ORDER

between Bugher's act and the alleged injury. Thus, plaintiff's Eighth Amendment claim against Bugher is dismissed.[1]

Plaintiff's negligence claim against Bugher, however, is not subject to dismissal. Under Oregon law, to state a viable negligence claim, the plaintiff must allege facts showing "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent." *Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 784 (2023) (quoting *Solberg v. Johnson*, 306 Or. 484, 490-91 (1988)).[2]

Bugher asserts that the allegations against him are "far too general" to establish foreseeability, but notably absent from the briefing is any citation to specific case law to which plaintiff's allegations here could be compared. Bugher Mot. Dismiss 13, ECF 85; Bugher Reply 12–14, ECF 90. Under Oregon law, "[f]oreseeability (what prospectively might happen) is

---

[1] Because plaintiff has not alleged facts sufficient to establish a constitutional violation, it is not necessary to reach Bugher's argument that he is entitled to qualified immunity regarding plaintiff's Eighth Amendment claim. Bugher Mot. Dismiss 10–13, ECF 85; *see Segura v. Cherno*, No. 6:21-cv-0740-YY, 2022 WL 3587860, at *12 (D. Or. May 25, 2022) ("The court has discretion to decide which of the two prongs of the qualified immunity analysis," 1) whether a constitutional violation occurred, and 2) whether the right was clearly established, "should be addressed first in light of the circumstances in the particular case at hand.") (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[2] It should be noted that plaintiff's complaint alleges that defendants, including Bugher, owed plaintiff "a higher standard of care because of the nature of incarceration," and that "[a]s a ward of the State, [d]efendants manage all aspects of [plaintiff's] health care and decide when a request for a medical services or treatment should be granted." Second Am. Compl. ¶ 243, ECF 81. Neither party, though, discusses any heightened standard of care in making their arguments as to whether plaintiff's negligence claim against Bugher should be dismissed, and both analyze the claim using Oregon's framework for "ordinary" negligence claims. *See* Pl. Resp. Bugher 17, ECF 86; Bugher Reply 11, ECF 90. Thus, the analysis proceeds using that "ordinary" negligence framework.

considered separately from causation (what retrospectively did happen) and serves as a limit on the scope of liability." *Chapman v. Mayfield*, 358 Or. 196, 206 (2015). "It is not necessary that the risk of harm be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would have reasonably expected the injury to occur." *Id.* (simplified). "The Oregon Supreme Court has 'repeatedly stated' its 'preference for giving voice to the community's judgment through a jury determination prevails, except in extreme cases, where no reasonable person could find that the harm that befell the plaintiff was reasonably foreseeable.' " *Barley v. ArcBest II, Inc.*, No. 3:22-cv-01921-JR, 2026 WL 686394, at *20 (D. Or. Mar. 11, 2026) (quoting *Piazza v. Kellim*, 360 Or. 58, 80 (2016); *Pitts v. G4S Secure Sols. (USA) Inc.*, No. 3:20-cv-00074-AC, 2020 WL 6333959, at *5 (D. Or. May 26, 2020), *report and recommendation adopted,* No. 3:20-cv-00074-AC, 2020 WL 4495453 (D. Or. July 31, 2020) ("[U]nforseeability as a matter of law will be found only in extreme cases where the harm results from a 'concatenation of highly unusual circumstances.' ") (quoting *Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 609 (1970)).

Here, plaintiff has identified the specific type of harm at issue—ODOC's repeated and ongoing delays regarding referrals for outside medical appointments—and alleges the nature of that harm put plaintiff "squarely within the group of people at risk." *Domion v. Triquint Semiconductor, Inc.*, No. 3:16-cv-01852-SB, 2017 WL 7310643, at *5 (D. Or. Nov. 2, 2017), *report and recommendation adopted,* No. 3:16-cv-01852-SB, 2018 WL 847240 (D. Or. Feb. 13, 2018); *see also D.B. v. IE Hotel Grp., LLC*, No. 3:22-cv-00432-IM, 2023 WL 1444785, at *6 (D. Or. Feb. 1, 2023) (explaining that, under Oregon law, "a plaintiff need not allege that defendants were aware of the risk of danger to plaintiff specifically," but instead "a plaintiff need only allege that defendants were aware of the risk of danger to persons *such as* the plaintiff")

8 – OPINION AND ORDER

(emphasis in original). Plaintiff alleges that Bugher had actual knowledge regarding the delay issue, and that Bugher took action on the basis of that knowledge by, for example, removing defendant Roberts from his role in directly managing outside provider appointments. Second Am. Compl. ¶ 106, ECF 81. A reasonable trier of fact could find that the delay plaintiff experienced was "within the type of potential harms that made" Bugher's failure to take more meaningful action unreasonable. *Domion*, 2017 WL 7310643 at *5 (citing *Chapman*, 358 Or. at 206); *see also Pitts*, 2020 WL 6333959 at *6 (finding that the plaintiff's allegations that he reported his employer-contractor's "unlawful practices directly to Facebook, that Facebook failed to supervise and correct [the employer-contractor's] actions, and that Facebook's inaction created a foreseeable risk that [the employer-contractor] would discriminate and retaliate against Plaintiff" was sufficient to state a negligence claim against Facebook under Oregon law).

Thus, Bugher's motion to dismiss plaintiff's negligence claim against him is denied.

### III.    Linda Bono

Defendant Bono is one of the nurse practitioners who treated plaintiff following the November 2024 assault. She moves to dismiss plaintiff's eighth and ninth claims against her, arguing that the Second Amended Complaint only references her by name a single time and thus fails to contain sufficient factual allegations against her on any theory. Bono Mot. Dismiss 4–5, ECF 88.

In response to Bono's motion, plaintiff has set forth more detailed factual allegations that, generally speaking, describe the treatment plaintiff received after the assault and which he asserts could be added to an amended complaint to state a claim against Bono. *See* Pl. Resp. Bono 8–12, ECF 92. Those additional allegations include:

9 – OPINION AND ORDER

- On December 3, 2024, Defendant Bono ordered for Mr. Lobue to "continue oxycodone" at 10 mg twice per day for five days.

- On December 9, 2024, Defendant Bono ordered to decrease Mr. Lobue's oxycodone to 10 mg once per day for five days. Defendant Bono also ordered for Mr. Lobue to have facial xrays in two weeks. Defendant Bono also ordered "[OMFS] @ OHSU. Refer to OHSU."

- Oxycodone was never thereafter reordered for Mr. Lobue. He was instead prescribed only therapeutic doses of ibuprofen and acetaminophen. Mr. Lobue complained that the ibuprofen and acetaminophen hurt his stomach.

- On December 18, 2024, Defendant Bono noted Mr. Lobue complained that the right side of his face was numb and swollen, and also noted "He has not been to see surgery as yet" and "revisit facial surgery appt."

- On December 20, 2024, x-rays were performed of Mr. Lobue's facial bones. The x-rays found: "There is a minimally displaced fracture of the right eye. The nasal bone and right orbital floor fractures are not well visualized radiographically." Defendant Bono was listed as Mr. Lobue's provider on the x-ray report.

- On December 24, 2024, Defendant Bono noted Mr. Lobue "has not seen surgery yet. Will continue to monitor – CR on Monday for review of surgical consult."

- On December 27, 2024, Mr. Lobue's medical records from his ER visit to St. Anthony's were first requested and obtained by ODOC.

- On December 30, 2024, Defendant Bono ordered "Please RE-ENTER order to schedule [OMFS] consult @ OHSU TODAY!"

- On December 31, 2024, Defendant Bono noted "[maxillofacial] consult still not scheduled" and "awaiting maxillofacial surgeon consult."

- On January 3, 2025, OHSU sent a fax to Defendant Bono requesting Mr. Lobue's dental imaging and panoramic imaging.

- On January 7, 2025, Defendant Bono ordered that Mr. Lobue be referred to in-house dental for his increased upper gumline discomfort with a

10 – OPINION AND ORDER

"metallic" sensation on the gum.

- On January 10, 2025, Mr. Lobue was seen by an ODOC/OSP dental provider. The provider noted that Mr. Lobue was recovering from facial trauma, and that he was "in queue" for an evaluation at OHSU but not scheduled yet. Panoramic x-rays were also taken.

- On January 15, 2025, Defendant Bono noted that Mr. Lobue "has seen dental but still awaits facial surgery consult."

- On January 22, 2025, Defendant Bono noted Mr. Lobue was "still waiting to be seen by maxillofacial surgeon," and that she "reassured that he has not been over looked but it is difficult to schedule @ OHSU." Defendant Bono also noted "Scheduling I again reminded of Mr. Lobue's need to be seen – Admin is notified."

- On February 11, 2025, Defendant Bono noted that Mr. Lobue "still hasn't seen a surgeon – will check w/ scheduling again in AM."

- An appointment for Plaintiff with an OMFS was finally scheduled sometime between March 3 and March 5, 2025.

- In failing to obtain Mr. Lobue's records from St. Anthony's until December 27, 2024, records which ODOC medical staff knew any OMFS or ENT facial plastic surgeon would want to review.

- In failing to refer Mr. Lobue for dental imaging until January 7, 2025, imaging which ODOC medical staff knew any OMFS or ENT facial plastic surgeon would want to review.

- In inadequately managing Mr. Lobue's pain, by discontinuing his opioid pain medication, and instead prescribing him only ibuprofen and acetaminophen.

Pl. Resp. Bono 6–7, ECF 92 (some formatting modified). Plaintiff asserts these allegations are sufficient to state Eighth Amendment and negligence claims because they show:

> Defendant Bono was aware of Plaintiff's serious medical needs yet delayed in ordering Plaintiff be referred to an OMFS and in

11 – OPINION AND ORDER

> obtaining records and imaging which she knew any OMFS would want to review. Defendant Bono also discontinued Plaintiff's opioid medications and instead relied solely on therapeutic doses of over-the-counter pain medication to manage Plaintiff's pain, which were inadequate and aggravated Plaintiff's stomach. Finally, Defendant Bono was aware that there were delay issues with scheduling Plaintiff to be seen by an OMFS but did not successfully expedite the process. Defendant Bono also did not notify administration regarding the delay issues until January 22, 2025.

*Id.* at 11.

The additional allegations are sufficient to state a claim for medical negligence under Oregon law, but are not sufficient to state an Eighth Amendment claim based on deliberate indifference. Bono's motion to dismiss is therefore granted in part and denied in part.

To plead a medical negligence claim under Oregon law, a plaintiff must allege facts showing "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered harm measurable in damages; and (4) there is a causal link between the breach and the harm." *Garcia v. United States*, No. 3:18-cv-00176-HZ, 2022 WL 1102595, at *5 (D. Or. Apr. 12, 2022) (citing *Zehr v. Haugen*, 318 Or. 647, 653-54 (1994)).[3]

Bono asserts the alleged facts show that she "actively worked to schedule plaintiff's OMFS appointment, repeatedly followed up with scheduling, placed numerous orders for scheduling, and escalated the matter to administration when it became evident that her efforts

---

[3] Plaintiff asserts that Oregon's rule for ordinary negligence should apply. *See* Pl. Resp. Bono 11, ECF 92 ("[T]o prevail on a common-law negligence claim under Oregon law, a plaintiff must allege and prove: (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.") (quoting *Son v. Ashland Community Healthcare Services*, 239 Or. App. 495, 506 (2010)). But the very case that plaintiff cites goes on to explain that a different standard applies for medical negligence claims. *See Son*, 239 Or. App. at 505–506.

were unsuccessful," and that they do not show she breached any duty to plaintiff. Bono Reply 6, ECF 95. As for plaintiff's allegation that Bono was medically negligent in managing her pain medication, Bono asserts that plaintiff does not allege that she was "aware of plaintiff having ongoing pain requiring narcotic pain medications or that ibuprofen and acetaminophen hurt his stomach" and thus no negligence claim can be based on this theory. Finally, Bono asserts that plaintiff has not alleged any facts showing that her alleged delay in obtaining plaintiff's records and imaging was the reason that "OHSU refused to schedule plaintiff to see OMFS until it received these materials or that not already having these materials in any way caused a delay in scheduling." Bono Reply 7, ECF 95.

Plaintiff's proposed amended allegations are sufficient to state a medical negligence claim against Bono. While it may not be clear at this stage the precise reason or reasons that plaintiff's referral to OHSU was delayed, plaintiff's allegations appear to assert that Bono was one of the primary medical providers at OSP who treated plaintiff after the November 2024 assault. Pl. Resp. Bono 5–7, 9, ECF 92. After the assault, during which plaintiff suffered several facial fractures, nearly six weeks passed before plaintiff's ODOC providers requested plaintiff's records from his emergency room visit, and another week and a half passed before Bono referred plaintiff to in-house dental. *See id.* at 5–7. These images, plaintiff asserts, were ones that Bono knew any oral and maxillofacial surgeon would want to review in examining plaintiff for potential surgery. *Id.* at 9. Plaintiff also asserts that he "complained that the ibuprofen and acetaminophen" that Bono had prescribed "hurt his stomach" and was not adequate to control his pain. *Id.* at 9–10. As mentioned above, plaintiff's amended allegations suggest that Bono was plaintiff's primary, if not sole, ODOC medical provider who treated plaintiff following the assault, and thus a reasonable inference can be drawn that Bono knew or should have known

13 – OPINION AND ORDER

whether the medication she had prescribed plaintiff was working adequately to alleviate his pain or whether he was suffering any side effects. And plaintiff alleges that, in the face of growing delay in scheduling plaintiff's OMFS consult, Bono could have done more to expedite the process. Plaintiff's amended allegations are sufficient at this preliminary stage to state a claim for medical negligence.

These allegations do not, however, establish that Bono was deliberately indifferent to plaintiff's medical needs. To state an Eighth Amendment claim arising from allegedly inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is a "high legal standard" that requires the plaintiff to establish both "objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004).

First, the plaintiff must allege that that medical need at issue is objectively "serious," meaning that the defendant's alleged failure to treat it resulted in "further significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1086 (simplified); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.") (simplified). The second subjective element requires the plaintiff to allege facts showing the defendant knew of and disregarded "an excessive risk to inmate health and safety," which "requires more than ordinary lack of due care." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (simplified); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference."). The alleged indifference must be substantial; "indifference, negligence, or medical malpractice, . . . [e]ven gross negligence" are not sufficient "to establish deliberate indifference to serious medical needs." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013) (simplified).

Perhaps, as plaintiff has alleged, Bono could have acted more quickly in obtaining plaintiff's records or could have taken more assertive action in helping to secure a more timely referral for plaintiff's OMFS consult. But the allegations also show that Bono examined plaintiff repeatedly, worked to re-enter or re-submit scheduling requests, and, for example, promptly referred plaintiff to an in-house dental provider once such a referral was requested. At most, plaintiff's allegations could support a negligence claim, but that is not sufficient to sustain an Eighth Amendment claim for deliberate indifference. *See Librande v. Oregon Dep. of Corrs.*, No. 6:24-cv-01739-MTK, 2026 WL 638454, at *4 (D. Or. Mar. 6, 2026) ("[T]he record supports a finding of negligence arising from the failure to lodge a conflict between Plaintiff and his assailant, and negligence cannot sustain a claim for deliberate indifference."); *Bray v. Oregon*, No. 3:23-cv-00631-CL, 2025 WL 3563415, at *12 (D. Or. Dec. 11, 2025) ("At most, the failure to ensure that Plaintiff had constant access to bags for therapeutic ice rises to the level of negligence, which is not sufficient to survive summary judgment on a claim for an Eighth Amendment violation."); *Est. of Forrest v. Multnomah Cnty.*, No. 3:20-cv-1689-AR, 2025 WL 3279894, at *6 (D. Or. Nov. 25, 2025) (finding that nurses who misdiagnosed the plaintiff as suffering from "an asthma attack instead of an overdose" were not deliberately indifferent in part because they "provided life saving measures and ensured that paramedics were promptly called").

15 – OPINION AND ORDER

**ORDER**

Defendant Joseph Bugher's Motion to Dismiss (ECF 85) is granted in part and denied in part in that it is granted as to plaintiff's Eighth Amendment Claim but denied as to plaintiff's state law negligence claim against Bugher. Defendant Linda Bono's Motion to Dismiss (ECF 88) is granted in part and denied in part in that it is granted as to plaintiff's Eighth Amendment claim but denied as to plaintiff's state law negligence claim against Bono. Plaintiff shall file an amended complaint that contains the proposed amended allegations set forth in plaintiff's Response to Bono's Motion to Dismiss (ECF 92 at 5–7) within 30 days of this Order.

IT IS SO ORDERED.

DATED June 8, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

16 – OPINION AND ORDER